IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| 2M ASSET MANAGEMENT, LLC, § | | |
| § | | |
| *Plaintiff*, § | Civil Action No. 2:06-CV-215 | |
| § | | |
| v. § | | |
| § | JUDGE RON CLARK/ | |
| NETMASS, INC., CONNECTED § | JUDGE EARL HINES | |
| CORPORATION, PRO SOFTNET § | | |
| CORPORATION, SUBTERRANEAN § | | |
| DATA STORAGE CO., LLC, STORAGE § | | |
| ELEMENTS INC., U.S. DATA TRUST § | | |
| CORPORATION, INTEGRATED § | | |
| DYNAMIC SOLUTIONS, INC., LEVEL2 § | | |
| STORAGE, LLC, HOTSPOT § | | |
| ENTERPRISES, INC., PROFESSIONAL § | | |
| OFFSITE DATA BACKUP, INC., § | | |
| § | | |
| *Defendant*s. § | | |

# MEMORANDUM

Defendants' Motion to Compel [Doc. #98] and Defendants' Motion for a More Detailed Proposed Claim Construction [Doc. # 101] are referred to the undersigned for a determination. This memorandum states the court's reasons for denying both motions.

## I. Introductory Admonishment

Rule 37, Federal Rules of Civil Procedure, and Local Rule AT-3 require litigants and their counsel to work in good faith to resolve discovery disputes without court intervention. Defendants' motion to compel represents the third discovery motion filed in as many months.

This circumstance suggests that counsel are entrenched and unwilling or unable to reach reasonable compromises.  As such, they disregard their duty to resolve ordinary discovery issues extrajudicially.  Accordingly, counsel and the parties are notified that the court may include appropriate sanctions in future orders resolving unnecessary discovery disputes.

## II. Background

2M Asset Management, LLC ("2M") alleges that Defendants infringe on U.S. Patent No. 6,321,254 ("the ` 254 patent") by making, using, selling, and offering to sell data storage products and services. The patent teaches a method for retrieving and storing data on a remote central file-storage system by a public, wide area transmission network.  The ` 254 patent application was filed on December 22, 1998, and claimed a priority date of June 24, 1996, based upon the filing date of a German patent application relating to the same invention.

It is undisputed that 2M timely submitted its proposed claim construction terms to Defendants in compliance with this court's Scheduling Order.  In addition, 2M sent, pursuant to the court's Scheduling Order, a privilege log to Defendants claiming that 162 documents are protected by the attorney-client privilege.  All but 4 of the documents involve communications with George Gotz, who is referred to throughout the log as an "attorney."

## III. Defendants' Motions

Defendants' motion for a more detailed claim construction asserts that 2M's proposed claim construction is "vague and unclear whether that construction covers certain hypothetical situations that are relevant to issues of patentability and infringement."  Their motion requests

the court to require 2M to supplement its proposed claim construction by responding to hypothetical questions created by Defendants.  Defendants argue that the court would, thereby, "force Plaintiff to take a position, one way or the other, on the critical features of the claims on which patentability and infringement will  turn."  Defendants note, however, that the court's Scheduling Order requires 2M to submit a Claim Construction Brief by March 1, 2007, and states that Defendants "will withdraw this motion as moot if 2M in its . . .opening brief provides the requested information."

Defendants' motion to compel seeks to require 2M to produce all documents to which 2M claims the attorney client privilege applies.  Defendants argue that these documents are discoverable because: (1) the communications were not between an attorney and a client; and, alternatively, (2) the crime-fraud exception to the attorney client privilege applies.  Netmass suggests that the court should conduct an *in camera* review of the 162 disputed documents.

2M filed a consolidated response to these motions.  2M opposes the motion for more detailed claim construction on the ground that it is premature, unsupported by precedent, and contrary to local patent rules.  2M opposes the motion to compel on the ground that communications at issue are privileged, and that circumstances for piercing the privilege are not present here.

## IV. Discussion

### A.   Motion For More Detailed Proposed Claim Construction

Based on available information, this district may have the honor of being the most active court in the nation in terms of alleged patent infringement cases filed. It is self-evident, therefore, that the court should not and cannot use up its limited time and resources in addressing premature matters that may not require a judicial resolution. This motion, therefore, will be denied without prejudice to reassertion after reviewing 2M's opening brief, and upon additional showings that (1) precedent supports the proposed hypothetical question procedure and (2) the court's established procedures are inadequate otherwise for ascertaining the parties' contentions as to the scope of the disputed claim terms, and properly construing the terms. To guide counsel in that respect, the court expresses skepticism that one party properly can manipulate or control the other's contentions by craftily-drafted hypothetical questions.

### B.   Motion To Compel Documents on Privilege Log

#### 1.   <u>Are the Gotz Documents Privileged?</u>

It is undisputed that all of the documents listed in the privilege log are relevant to this case. It is further undisputed that 158 of the 162 documents involved communications

between the inventors (and their wives)[1], and Mr. Gotz, a German patent agent.  Finally, the parties agree that (1) federal common law, as construed by the Federal Circuit, governs questions of privilege in patent cases, and (2) neither the Federal Circuit nor any other circuit court has addressed the question of whether United States or foreign privilege law applies to communications with foreign patent agents.

Defendants argue that these documents are not covered by the attorney-client privilege because Mr. Gotz is not considered an attorney under U.S. law. 2M responds that the communications with Gotz are privileged under German law, and comity dictates that this court defer to German law.  Each side cites authority supporting its position.

Federal district courts considering this issue have employed two approaches.  The first, advocated by Defendants here, is that "any communications touching base with the United States will be governed by the federal discovery rules while any communications related to matters solely involving [a foreign country] will be governed by the applicable foreign statute." *Golden Trade, S.r.L. v. Lee Apparel Company*, 143 F.R.D. 514, 520 (S.D.N.Y. 1992).  When communications took place in a foreign country or involved foreign attorneys, courts applying this approach defer "to the law of the country that has the 'predominant' or 'most direct and compelling interest' in whether those communications should remain confidential . . . ." *Astra Aktiebolag v. Andrez Pharmaceuticals, Inc.*, 208 F.R.D. 92, 98 (S.D.N.Y. 2002) *citing Golden Trade*, 142 F.R.D. at 522.  The jurisdiction with the "predominant interest" is either "the place where the allegedly privileged relationship was entered into or the place in which

---

[1] The court assumes, as the parties have, that the wives and the inventors were Mr. Gotz' clients with regard to the patent applications at issue.

that relationship was centered at the time the communication was sent." *Id.* (citations and quotations omitted).

The second approach, grounded in comity, is "to look to the foreign nation's law to determine the extent to which the privilege may attach." *Smithkline Beecham Corporation v. Apotex Corporation*, 193 F.R.D. 530, 535 (N.D. Ill. 2000). This is a two step inquiry: (1) the court must determine whether the foreign nation in question extends the privilege to its patent agents, and if so, (2) the court must look at the specific capacity in which the agent was functioning with respect to a given document. *Id.* If the patent agent was functioning as an attorney, then the communications are privileged. *Id.*

Here, Mr. Gotz is a German patent agent retained to render advice in connection with the invention, to file and prosecute the German patent application, and to handle all subsequent patent applications related to the German application. The inventors (and their wives) all resided in Germany at the time of these discussions and initiated the patent process in Germany by hiring Mr. Gotz. The relationship between the inventors and Mr. Gotz was entered into in Germany, and the relationship was always centered in Germany. The communications at issue involved German, Japanese, European, and U.S. patents, and were made in Germany. While Mr. Gotz communicated with a U.S. attorney, Mr. Frank Foster, on behalf of the inventors, there are only four documents listed as privileged between Mr. Foster and Mr. Gotz. The vast majority of the 162 documents do not relate to the U.S. patent.

Given these circumstances, if the court adopts the second approach centered on comity, it finds no indication of a substantial U.S. interest to justify overriding principles of international comity and applying U.S. privilege law. *See McCook Metals L.L.C. v Alcoa Inc.*, 192 F.R.D. 242, 256 (N.D. Ill. 2000). If the court follows the first approach, the result does not change. The court does not agree with Defendants' argument that if one document touches the U.S., all documents are governed by U.S. law. The cases cited by Defendants recognize the need to afford comity and deference to the laws of foreign countries, and they only sparingly applied U.S. law to documents created in a foreign country and privileged under that country's laws. *See, e.g., Golden Trade*, 143 F.R.D. at 522.

The court, therefore, will look to German law to determine whether the communications were privileged. *See, e.g., McCook Metals L.L.C.*, 192 F.R.D. at 256-57; *Smithkline Beecham Corporation*, 193 F.R.D. at 535. 2M presented evidence showing that client communications with German patent agents are confidential and privileged. *See* Pl's Ex. 8. Defendants do not argue that this is an incorrect statement of German law, and there is nothing before the court to suggest that this privilege does not apply to all the documents at issue. Moreover, the inventors specifically state that the communications related to the relevant patent applications, they expected the communications to be privileged, and they relied on this privilege in disclosing information.

Under these circumstances, 2M has carried its burden of demonstrating existence of the privilege.

    2.       Should the Privilege Be Pierced Under the Crime-Fraud Exception?

Defendants argue alternatively that the court should hold any privilege abrogated under the crime-fraud exception. As grounds, Defendants allege that the inventors of the `254 patent misled the United States Patent and Trademark Office ("PTO") by initially listing their wives as the inventors of the `254 patent, and by subsequently stating that their error was without deceptive intent. Defendants argue that misrepresentation about inventorship is material; that the PTO relied on the misrepresentation; and that had the correct information been given, the PTO "might have denied the '254 application over additional prior art that arose during the interval between the original German application and the United States application."

2M replies that the inventorship error was an honest mistake; that it was promptly corrected after being discovered; that Defendants produced no evidence that the mistake was in furtherance of fraud; and that there is irrefutable proof that the PTO did not rely on the inventorship error because it was corrected before the patent issued.

Both sides acknowledge that the burden of establishing that communications were for the purpose of getting advice for the commission of a fraud rests with the challenging party. Both sides further agree that Federal Circuit law governs, and that the challenging party must establish a *prima facie* case, the elements of which are articulated in *In re Spalding Sports*

*Worldwide, Inc.*, 203 F.3d 800, 807 (Fed. Cir. 2000).[2] Among these elements are "intent to deceive" and "injury to the party deceived."

Buying 2M's "honest mistake" story[3] requires one to assume that the actual inventors were incredibly naive and illiterate notwithstanding the assistance of learned representatives in both Germany and the United States. Nevertheless, their version of the facts is neither fanciful nor delusional. Therefore, that testimony cannot be rejected as frivolous or malicious *per se*. Simply put, their assertions may be true, and in the absence of any controverting evidence, the court is unwilling to find that they acted with deceptive intent when misstating facts as to inventorship, especially considering their subsequent prompt action in correcting their errors.

The court also cannot comfortably conclude that there was injury to the PTO, or any third party, as a result of reliance on the original misrepresentation. Defendants' arguments on this point are purely conjectural, and are discredited by the fact that the errors were corrected

---

[2] There are five elements to establish the crime-fraud exception: "(1) a representation of a material fact; (2) the falsity of that representation; (3) the intent to deceive or, at least, a state of mind so reckless as to the consequences that it is held to be the equivalent of intent (scienter); (4) a justifiable reliance upon the misrepresentation by the party deceived which induces him to act thereon; and (5) injury to the party deceived as a result of his reliance on the misrepresentation." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d at 807 (citations and quotations omitted). A finding of fraud must be "based on independent and clear evidence of deceptive intent with a clear showing of reliance, *i.e.* that the patent would not have issued but for the misrepresentation or omission." *Id.* (citations and quotations omitted).

[3] Uwe Mundry testified at his deposition that he and Wolfgang Meyer, the real inventors, were unaware of the legal difference between inventorship and ownership at the time their original German, or the subsequent United States patent applications were filed. Further, he testified that they were patenting the invention as a retirement plan or life insurance for their respective wives, and that they listed them as the inventors to insure that the wives would receive the potential benefits of the patent.

*before* the United States patent was issued. If the PTO perceived any injury to either itself or a third party, it had the ability, as pointed about by Defendants, to reject the application.

Consequently, the court concludes that Defendants fail to make a *prima facie* case that the communications at issue were for the purpose of getting advice for the commission of a fraud. The court further concludes that there is no compelling reason for an *in camera* examination of the documents. The motion to compel will be denied.

### V. Conclusion

An order denying both motions will be entered separately.

SIGNED this __28__ day of February, 2007.

_____
Earl S. Hines
United States Magistrate Judge